IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CT-3197-FL

| | | |
|---|---|---|
| PERCY JAMES TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

The matter now comes before the court on plaintiff's motions for a jury trial demand (DE 41, 42), motion to stay jury trial demand (DE 43), and motion for status (DE 45). Defendants did not respond to plaintiff's motions. Also before the court is defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 28), which, as discussed below, the court construes as a partial motion for summary judgment pursuant to Rule 56(a). The motion was fully briefed. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendant's partial motion for summary judgment, grants plaintiff's motions for a jury demand, and denies plaintiff's remaining motions as moot.

## STATEMENT OF THE CASE

On July 31, 2015, plaintiff, a federal inmate, filed the instant action *pro se* and contemporaneously filed a motion for leave to proceed without the prepayment of the filing fee. United States Magistrate Judge Robert B. Jones, Jr., then granted plaintiff's motion for leave to proceed without the prepayment of the filing fee on August 24, 2015. Plaintiff subsequently filed a motion to appoint counsel, motion to compel, and motion for leave to proceed *in forma pauperis*. On February 9, 2016, the court denied plaintiff's motion to appoint counsel and denied plaintiff's

motion to compel as premature. The court additionally denied as moot plaintiff's motion to proceed *in forma pauperis* in light of the magistrate judge's August 24, 2015, order. Finally, the court directed plaintiff to provide clarification as to whether he sought to bring his action pursuant to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2672, *et seq.*, <u>Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), or both.

On February 25, 2016, plaintiff filed his particularized complaint, and stated an intent to pursue his action against the United States pursuant to the FTCA only. The court allowed plaintiff to proceed with his FTCA action on April 6, 2016. In June 2016, plaintiff filed a motion for entry of default and a motion for default judgment. On July 13, 2016, the United States filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that plaintiff failed to state a claim upon which relief may be granted. The United States attached the following documents to its motion: a declaration from Stephen Berry ("Berry"), a physical therapist employed by the Federal Correctional Institution in Butner ("Butner"); portions of plaintiff's medical records; excerpts from the Federal Bureau of Prisons ("BOP") Program Statement; and the BOP's Health Services Procedures and Protocols Manual. The motion was fully briefed.

On August 22, 2016, plaintiff filed a motion for a subpoena of a government employee. The motion was fully briefed. On November 21, 2016, the court denied plaintiff's motion for entry of default, motion for default judgment, and motion for a subpoena. The court also provided the parties notice of its intent to construe the United States' motion to dismiss as a motion for summary judgment, and provided the parties an opportunity to respond. That same day, the clerk of court issued a Rule 56 letter in compliance with <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975). Plaintiff then filed a supplemental response to the United States' motion to dismiss, two motions for

2

a jury trial demand, a motion to stay the Rule 38 and 39 motions, and a motion for status.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff's action concerns his contention that the BOP beached its duty of care because its employees failed to provide plaintiff the proper medical shoes while plaintiff was incarcerated at Butner. Prior to his transfer to Butner, plaintiff was incarcerated at the Federal Correctional Institution-Otisville ("Otisville") in Otisville, New York. (Berry Decl. ¶ 10). While at Otisville, a nurse evaluated plaintiff on July 18, 2013, in response to plaintiff's complaint of a blister on his foot and right foot pain. (Id. and Attach. 1, p. 38). Plaintiff then attended a follow-up examination on August 14, 2013, and Dr. Diane Sommer entered a podiatry consultation request for plaintiff due to the fact that plaintiff was developing blisters and callouses on his right foot, despite having been provided diabetic shoes. (Id. p. 30).

Plaintiff was transferred from Otisville to Butner on September 30, 2013. (Id. ¶ 13). Following his arrival at Butner, Physician Assistant Robin Hunter-Buskey ("Hunter-Buskey") reviewed plaintiff's medical history. (Id. ¶ 13 and Attach. 1, p. 21). Hunter-Buskey noted that plaintiff had a history of uncontrolled diabetes, and a recent open wound on his right great toe which was now healed. (Id. p. 22). After reviewing plaintiff's medical history, Hunter-Buskey referred plaintiff to Berry, a physical therapist, to evaluate plaintiff's footwear, noting that plaintiff had been issued alternative footwear. (Id. ¶ 13 and Attach. p. 23).

On October 21, 2013, Berry examined plaintiff. (Id. ¶ 14 and Ex. 1, p. 18). In the course of the examination, plaintiff discussed his prior right toe wound with Berry, and reported "that he has always had the right type of shoes so he wouldn't develop wounds." (Id.) Plaintiff further stated that "the institutional boots and the alternate institutional shoes cause wounds on his feet and are too

3

heavy for his feet." (Id.) Berry noted that plaintiff's goal was "[t]o get a pair of diabetic shoes," and that plaintiff previously had been issued a pair of alternate institutional shoes, which plaintiff reported were too large. (Id. ¶ 16 and Ex. 1, pp. 18-19). Berry offered to provide plaintiff a pair of orthotic diabetic shoe inserts, but plaintiff declined. (Id. p. 19). Plaintiff reiterated that he needed medical shoes and requested that he be issued a soft shoe pass, which would have permitted him to wear his personal sneakers on the compound. (Id.) Berry denied plaintiff's request for a soft-shoe pass. (Id.) Berry, however, did schedule plaintiff to be seen by a physical therapist once per year for a routine diabetic foot screen. (Id.)

Over the next several months, Hunter-Buskey conducted several examinations of plaintiff in response to plaintiff's requests for, *inter alia*, alternative shoes and permission to wear his sneakers on the compound. (Id. ¶¶ 17, 18 and Ex. 1, pp. 1, 10, 11, 82). After examining plaintiff on February 24, 2014, Hunter-Buskey scheduled a consultation with the physical therapy department so that plaintiff could be re-evaluated for footwear inserts, even though plaintiff previously had declined the inserts. (Id. ¶ 19 and Ex. 1, p. 83). On June 24, 2014, plaintiff's primary care physician, Dr. Patrick Craft, examined plaintiff and stressed the importance of plaintiff getting his diabetes and blood pressure under control. (Id. ¶ 20 and Ex. 1, p. 71). That same day, L. Ruffin ("Ruffin"), a nurse practitioner, made a notation in plaintiff's medical records discontinuing the August 2013, podiatry consultation request because plaintiff was referred to the physical therapy department at Butner. (Id. p. 67). Throughout 2014, plaintiff was evaluated and treated by physical therapy and orthopedic staff, in addition to his primary care providers. (Id. ¶ 21 and Ex. 1, pp. 59-61, 72-80).

On October 1, 2014, Ruffin conducted a bi-lateral diabetic foot screen on plaintiff. (Id. ¶ 22

4

and Ex. 1, p. 87). Ruffin noted no deformities and that plaintiff was wearing authorized shoes which fit well. (Id.) Additionally, Ruffin assessed plaintiff as a category one diabetic patient, which did not qualify for medical shoes. (Id.) Finally, Ruffin instructed plaintiff to follow-up with his primary care provider or physical therapist in 6-9 months. (Id.) Plaintiff did not show up to his May 14, 2015, appointment. (Id. ¶ 23 and Ex. 1, p. 113). At that time, Berry made a notation in plaintiff's medical records stating that plaintiff would be permitted to request future diabetic foot care by making a written request to staff. (Id.)

Plaintiff then attended an appointment with Pascale Lecuire ("Lecuire"), a physician assistant, on August 10, 2015. (Id. ¶ 24 and Ex. 1, p. 108). Lecuire referred plaintiff for a physical therapy consultation for diabetic foot care and toenail trimming. (Id. pp. 108-109). Berry then conducted plaintiff's diabetic foot screen on September 17, 2015. (Id. ¶ 25, p. 102). In the course of the examination, plaintiff reported great toe tenderness to the touch, due to ingrown toe nails, and again requested a pair of medical shoes because his current shoes were "messing his feet up" and "causing him problems." (Id.) Berry noted that plaintiff had bilateral flat foot, but no other foot deformities. (Id.) Berry further noted that plaintiff qualified to wear alternate institution shoes, but refused to wear them. (Id. at p. 103).

In response to plaintiff's continued requests for medical shoes, Lecuire evaluated plaintiff on September 25, 2015. (Id. ¶ 26 and Ex. 1, p. 100). Plaintiff informed Lecuire of plaintiff's pending lawsuit and that plaintiff had been approved for medical shoes at a prior institution. (Id.) Lecuire, in turn, noted that plaintiff's chart reflected that plaintiff was authorized for medical shoes on July 19, 2013, but that a review of the clinical encounter note showed no documentation to indicate that plaintiff met the BOP criteria for the medical shoes. (Id. at pp. 100-101). Lecuire

5

informed plaintiff that he would not be permitted to wear sneakers on the compound, and that he would need to either wear the authorized alternate institution shoes or purchase boots in the commissary. (Id. at p. 101).

## DISCUSSION

A.     Motion for a Jury Demand

Plaintiff filed two motions for a jury demand, a motion to stay his jury demand, and then a final "motion for status" seeking to reinstate his request for a jury demand. Rule 38 provides that "[o]n any issue triable of right by a jury, a party may demand a jury trial by . . . serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served...." Fed. R. Civ. P. 38. The term last pleading refers to a pleading which contests the issue triable by a jury, such as an answer to a complaint or a reply to a counterclaim. See Fed. R. Civ. P. 7(a); Donovan v. Travelers Trash Co., 599 F. Supp. 43, 44 (E.D.N.C. 1984). Defendants have not yet filed an answer in this action. Accordingly, plaintiff's motion is GRANTED. Because the court granted plaintiff's motions for a jury demand, his motion to stay and "motion for status" are DENIED as MOOT.

B.     Motion for Summary Judgment

    1.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

    2. Analysis

        a. Medical Claims

Plaintiff alleges that Butner medical staff acted with negligence when they refused to provide him with proper medical shoes and denied him injections for his back. North Carolina imposes substantive legal requirements that a person must follow to pursue a medical malpractice claim. See N.C. R. Civ. P. 9(j). Under North Carolina Rule of Civil Procedure 9(j), a plaintiff's medical malpractice complaint against a healthcare provider[1] must assert that the medical care has been reviewed by a person who is reasonably expected to qualify (or whom the plaintiff will move to qualify) as an expert witness and who is willing to testify that the medical care received by the plaintiff did not comply with the applicable standard of care. See N.C. R. Civ. P. 9(j)(1), (2); see, Hines v. Correct Care Solutions, LLC, 604 F. App'x 256, 258 (4th Cir. 2015); Moore v. Pitt County Mem'l Hosp., 139 F. Supp. 2d 712, 713 (E.D.N.C. 2001) ("Plaintiff's complaint alleges medical malpractice claims against PCMH, and she is required to comply with certification requirement of Rule 9(j), which she failed to do."). Failure to comply with Rule 9(j) is grounds for dismissal of a

---

    [1] A healthcare provider is defined as "[a] person who . . . is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, radiology, nursing, physiotherapy, pathology, anesthesiology, anesthesia, laboratory analysis, rendering of assistance to a physician, dental hygiene, psychiatry, or psychology." N.C. Gen. Stat. § 90-21.11.

state medical malpractice claim brought in federal court. See Littlepaige v. United States, 528 F. App'x 289, 293 (4th Cir. 2013). Alternatively, the complaint must allege facts establishing negligence under the common-law doctrine of *res ipsa loquitur*. See N.C. R. Civ. P. 9(j)(3).

Here, plaintiff contends that Berry's declaration, submitted by defendants in support of their motion for summary judgment, satisfies 9(j)'s expert certification requirement. Berry's affidavit, however, is not sufficient to meet Rule 9(j)'s certification requirement because it was not submitted by plaintiff and does not assert that a medical expert reviewed plaintiff's medical records prior to the date plaintiff originally filed this action on February 9, 2016. (See Berry Aff.); see Thigpen v. Ngo, 355 N.C. 198, 166, 558 S.E.2d 162, 166 (2002), 558 S.E.2d at 166 ("This Court also granted discretionary review to determine if an amended complaint which fails to allege that review of the medical care in a medical malpractice action took place before the filing of the original complaint satisfies the requirements of Rule 9(j). We hold it does not."). Morever, the fact that plaintiff failed to include the required certification at the time he filed his complaint "leads to dismissal." See Thigpen, 355 N.C. at 165. Thus, because plaintiff's original complaint did not contain the necessary Rule 9(j) certification, he failed to comply with Rule 9(j)'s certification requirement. See, Rudisill v. United States, No. 5:13-CV-110-F, 2014 WL 1117976, at *3 (E.D.N.C. Mar. 20, 2014) ("In effect, *[Brown v. Kindred Nursing Ctrs. E.*, 364 N.C. 76, 692 S.E.2d 87 (2010)] precludes a party from filing a medical malpractice claim, obtaining Rule 9(j) certification after filing the lawsuit, and then requesting leave to amend the complaint to include the Rule 9(j) certification."); Savage v. United States, No. 5:10-CT-3169-FL, 2011 WL 3664798, at *2 (E.D.N.C. Aug. 18, 2011) ("Based upon the foregoing, plaintiff may not amend his initial complaint to include the necessary Rule 9(j) certification.").

8

As stated, Rule 9(j) provides one narrow exception to its medical certification requirement: a litigant is excused from Rule 9(j)'s pre-filing certification requirement if negligence may be established under the doctrine of *res ipsa loquitur*. See N.C. R. Civ. P. 9(j)(3); Smith v. Axelbank, 730 S.E.2d 840, 843 (N.C. App. 2012). This doctrine applies "only when the occurrence clearly speaks for itself." Diehl v. Koffer, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000) (quotation and emphases omitted). Here, plaintiff makes the conclusory allegation that the *res ipsa loquitur* doctrine applies in this action, but has not alleged circumstances that support its application. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (citation omitted); see, e.g., White v. White, 886 F.2d 721, 723 (4th Cir.1989) (stating minimum level of factual support required). Thus, the *res ipsa loquitur* exception does not apply. Based upon the foregoing, plaintiff failed to meet the requirements of Rule 9(j), and his negligence claims are DISMISSED without prejudice.

  b. Remaining Claims

In addition to his medical negligence claims, plaintiff states that he was not permitted to eat in the "mainline" because he was wearing inappropriate footwear. Plaintiff also states that Mr. Henry, Butner's Assistant Health Services Administrator, placed him in the special housing unit and ordered staff to write a false incident report after plaintiff requested "back injections." Finally, plaintiff states that he was denied access to a law library. Defendants did not address plaintiff's remaining claims in their motion for summary judgment. Given the lack of clarity with respect to plaintiff's filings, the court ALLOWS the parties an additional opportunity to file dispositive motions addressing plaintiff's remaining claims.

**CONCLUSION**

For the foregoing reasons, the court orders as follows:

(1) Defendants' partial motion for summary judgment (DE 28) is GRANTED, and plaintiff's FTCA action related to his medical negligence claims are DISMISSED without prejudice;

(2) Plaintiff's motions for a jury trial demand (DE 41, 42) is GRANTED;

(3) Plaintiff's motion to stay jury trial demand (DE 43) and motion for status (DE 45) are DENIED as MOOT;

(4) Dispositive motions addressing plaintiff's remaining motions are due by **April 3, 3017.**

SO ORDERED, this the 16th day of February, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge