IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CT-3197-FL

| | | |
|---|---|---|
| PERCY JAMES TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

The matter comes before the court on defendant's motion to dismiss for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1), (6) (DE 67), which the court construes as a motion for summary judgment pursuant to Rule 56(a). Also before the court are the following motions: 1) defendants' motion for reconsideration and to strike plaintiff's jury trial demands (DE 54), 2) plaintiff's motion to stay (DE 56), 3) plaintiff's motion to appoint counsel (DE 59), plaintiff's motion for summary judgment (DE 72), and 4) plaintiff's motion for entry of default (DE 74). The issues raised are ripe for ruling. For the following reasons, the court grants defendants' motion for summary judgment and denies the remaining motions.

**STATEMENT OF THE CASE**

On July 31, 2015, plaintiff, a federal prisoner, filed the instant action pro se and contemporaneously filed a motion for leave to proceed without the prepayment of the filing fee. On August 24, 2015, United States Magistrate Judge Robert B. Jones, Jr., granted plaintiff's motion for leave to proceed without the prepayment of the filing fee. On January 29, 2016, plaintiff subsequently filed a motion to appoint counsel, motion to compel, and motion for leave to proceed in forma pauperis. On February 9, 2016, the court denied plaintiff's motion to appoint counsel and

denied plaintiff's motion to compel as premature. The court additionally denied as moot plaintiff's motion to proceed in forma pauperis in light of the magistrate judge's August 24, 2015, order. Finally, the court directed plaintiff to provide clarification as to whether he sought to bring his action pursuant to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2672, et seq., Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), or both.

On February 25, 2016, plaintiff filed a particularized complaint and stated an intent to pursue his action against defendant pursuant to the FTCA only. In his particularized complaint, plaintiff brought four claims: (1) a medical negligence claim; (2) a claim that he was denied food service at "mainline"; (3) a claim related to plaintiff's placement into a specialized housing unit ("SHU"); and (4) a claim of access to a law library. (See Am. Compl. 5–6). The court allowed plaintiff to proceed with his FTCA action against defendant on April 6, 2016. Accordingly, all other previously-named defendants were dismissed from this action.

On July 13, 2016, defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that plaintiff failed to state a claim upon which relief may be granted regarding his medical negligence claim. On November 21, 2016, the court provided the parties notice of its intent to construe defendant's motion to dismiss as a motion for summary judgment, and provided the parties an opportunity to respond. Plaintiff subsequently filed a response in opposition and various other motions, for a jury trial, to stay his jury demand, and for status.

On February 16, 2017, the court granted defendant's motion for summary judgment as to his medical negligence claims. In the order, the court dismissed plaintiff's FTCA action related to his medical negligence claims and set a new deadline of April 3, 2017, for dispositive motions to address plaintiff's three other remaining claims. The court also granted plaintiff's motion for a jury

2

trial. On February 27, 2017, plaintiff filed a motion for extension of time, which the court granted on March 30, 2017, extending the deadline to file dispositive motions to August 15, 2017.

On March 30, 2017, defendant filed the instant motion for reconsideration of plaintiff's jury trial demand and motion to strike plaintiff's jury trial demand. On April 5, 2017, plaintiff filed the instant motion to stay on the basis that he was in protective custody and awaiting transfer to another incarceration facility. On April 25, 2017, defendant responded in opposition. On May 8, 2017, plaintiff filed the instant motion to appoint counsel because of his restrictive control status. On May 25, 2017, defendant responded in opposition.

On August 15, 2017, defendant filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1),(6) for failure to state a claim upon which relief may be granted. In support of their motion, defendants attach the declaration of Christina Kelley, providing plaintiff's administrative grievance history. (See Kelley Decl. (DE 69), Attach. 1, 2). On February 2, 2018, the court provided the parties notice of its intent to construe the United States' motion to dismiss as a motion for summary judgment, and provided the parties an opportunity to respond. The clerk of court issued a Rule 56 letter in compliance with Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). On February 23, 2018, defendants provided additional materials to support their motion, including: a declaration by Robin Hunter-Buskey ("Hunter-Buskey") (DE 79-1), the clinical encounter log from November 26, 2013 (DE 79-2), and the November 26, 2013, incident report (DE 79-3). On March 13, 2018, plaintiff filed a reply addressing defendant's additional materials.

In the meantime, on September 5, 2017, plaintiff filed the instant motion for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56, and defendants timely responded in opposition. On December 18, 2017, plaintiff filed the instant motion for entry of default on the basis

3

that defendants did not respond to his motion for summary judgment. On December 19, 2017, defendants responded in opposition.

## STATEMENT OF FACTS

Except as where otherwise identified below, the facts viewed in the light most favorable to plaintiff may be summarized as follows. On November 25, 2013, plaintiff reported to Health Services for a "call out" to address his illnesses, including pain of his back, hip, elbow, ankle, and leg, as well as vision issues, a lump in his scrotum, and hypertension. (See Pl.'s Aff. (DE 69-1) 3). Due to the uncomfortable chairs in the waiting area, plaintiff sat on the floor. (See id.). While he was waiting, plaintiff alleges that Hunter-Buskey, a physician's assistant at Health Services, told others in the waiting area to leave, however, plaintiff was one of four names who Hunter-Buskey requested to stay. (See id.). A few minutes later, Hunter-Buskey came back into the waiting area told plaintiff to return to his housing unit. (See id.). Hunter-Buskey states that there was an institution recall before plaintiff's 12:30 appointment, and that he refused to leave without receiving an evaluation. (See Hunter-Buskey Decl. (DE 79-1) 3).

Plaintiff was unable to get up from the floor due and required medical assistance, three staff members, to help him up. (See Pl.'s Aff. (DE 69-1) 4). Plaintiff alleges he lost his balance because he was lifted up too quickly. (See id.). Plaintiff made it about 50–70 feet outside Health Services before he lost control of his left leg and felt pain in his hip and back. (See id.). He was carried back to Health Services for treatment. (See id.). Hunter-Buskey states that prior to her direct observation, plaintiff moved on his own without difficulty, but that "[o]nce he was aware that he [was] under my direct observation, he moved in a much slower manner, and walked with a limp and maintained a rigid posture." (See Hunter-Buskey Decl. (DE 79-1) 3).

4

Once plaintiff was in the treatment area, plaintiff alleges that he was verbally berated by Mr. Henry, the assistant Health Services administrator, and Mr. Henry said to him, "Who the f*** do you think you are? Are you trying to make me look bad? Well, it's not going to be Percy Tucker's way, it's going to be my way! Do you understand me? Look at me when I am talking to you! You don't deserve anything! And you are going to spend Thanksgiving in the SHU!" (See Pl.'s Aff. (DE 69-1) 4). Plaintiff states that his Federal Bureau of Prisons record will show that his leg condition is a result of an attack by "Inmate Rice" at Brooklyn MDC in February 2013, and relates to his back condition. (See id.). Plaintiff also states that he had not been seen by a doctor upon his transfer to "FCI-2." (See id.).

After this alleged incident, the medical team returned to the treatment room, and plaintiff received medical treatment. (See id. 5). Hunter-Buskey gave plaintiff a physical exam. (See Hunter-Buskey Decl. (DE 79-1) 4). Hunter-Buskey put plaintiff in a wheelchair after his exam. (See Pl.'s Aff. (DE 69-1) 5). Hunter-Buskey wheeled plaintiff into the waiting room area and then went to speak with someone in the treatment area. (See id.). Plaintiff states that the person she was speaking with, who is not identified by plaintiff, was talking to her about housing him in the SHU. (See id.). Plaintiff states that his medical records show that Hunter-Buskey ordered an injection in November 2013. (See id.; see also (DE 79-2) 2).

When Hunter-Buskey returned, she told plaintiff about the conversation she had and plaintiff informed her that he was having issues with his bladder. (See Pl.'s Aff. (DE 69-1) 5). In response, Hunter-Buskey told plaintiff she would get him protective pads. (See id.). Thereafter, Hunter-Buskey left and another person, who plaintiff does not identify, then gave him the protective pads he requested. (See id. 6). On his way out from treatment, plaintiff was stopped by Mr. Henry, who

5

plaintiff believes was hiding. (See id.). Mr. Henry told him he could not take his wheelchair with him out of the waiting area. (See id.). Plaintiff lifted himself up to leave and started walking back to his housing unit. (See id.). Plaintiff alleges Mr. Henry followed plaintiff and verbally assaulted him. (See id.). Plaintiff told Mr. Henry that he could not speak to him "in that way" and then Mr. Henry called for plaintiff to be taken to the SHU. (See id.). Plaintiff was let out of the SHU one hour later. (See id.). Later in the day, plaintiff was called into the Lieutenant's Office to "answer the shot." (See id.). The next day, plaintiff learned that Mr. Henry went to the Lieutenant's Office to demand plaintiff be put in the SHU even though "this wasn't his shot[.]" (See id.).

After plaintiff left the medical center, Hunter-Buskey states, "I then contacted the Lieutenant, who encouraged me to write Mr. Tucker an incident report if he continued to refuse my order to return to his housing unit." (See Hunter-Buskey Decl. (DE 79-1) 4). The next day, Hunter-Buskey, on November 26, 2013, "wrote an incident report charging Mr. Tucker with the Code 307 prohibited of refusing to obey an order of any staff member[,]" for which he was sanctioned, losing commissary privileges for 60 days. (See Hunter-Buskey Decl. (DE 79-1) 5) (internal citation omitted).[1]

## DISCUSSION

A. Plaintiff's Motion for Counsel

There is no constitutional right to counsel in civil cases and courts should exercise their discretion to appoint counsel for pro se civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). Exceptional circumstances depend upon "the type and

---

[1] Plaintiff's assertions in his complaint differ from the record. In his complaint, plaintiff asserts that it was when he requested injections for his back pain, that he was "threatened and thrown in the [SHU] by Mr. Henry making false statements to his staff and ordered that staff member to file a false incident report on an event she never saw." (Am. Compl 6.). Additionally, plaintiff states that he was "denied access to the 'Law Library' and ability to access the courts." (Id.).

6

complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982)). Plaintiff's case is not complex and plaintiff has demonstrated his ability to proceed pro se. Thus, plaintiff does not present exceptional circumstances which merit the appointment of counsel. Therefore, plaintiff's motion is DENIED.

B.  Plaintiff's Motion to Stay

Plaintiff moves to stay on the basis that he is under protective custody and has limited access to resources. (See Mem. Supp. Mot. Stay (DE 56) ¶¶ 1, 3). Further, plaintiff claims he is pending transfer and not sure of his new location. (See id. ¶ 4).

A court has the inherent, discretionary power to stay a case to control its docket. See Landis v. North American Co., 299 U.S. 248, 254 (1936). "The party seeking a stay must satisfy it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983). Determining whether a stay is warranted requires the balancing of "various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." Maryland v. Universal Elections, Inc., 729 F.3d 370, 375 (4th Cir. 2013) (quoting United States v. Ga. Pac. Corp., 562 F.2d 294, 296 (4th Cir. 1977)).

Plaintiff's motion to stay fails to provide any specific examples of how plaintiff's protective status or the possibility of his transfer is presently interfering with his ability to prosecute his case. Plaintiff's speculative motion is based upon his custodial status, which is invariably subject to change because prisoners do not have the constitutional right to be incarcerated in any particular

prison, jail, or confinement facility of any particular security level. See Meachum v. Fano, 427 U.S. 215, 223–24 (1976). Additionally, plaintiff has been an active participant in the case and after filing the instant motion, filed additional motions to transfer this case, a motion for temporary injunction, a motion for summary judgment, a motion for an entry of default, and a response to defendants' additional materials for summary judgment. Thus, plaintiff's motion to stay is DENIED.

C.  Plaintiff's Motion for Summary Judgment and Motion for Entry of Default

Plaintiff's motion for summary judgment is a memorandum of conclusory facts, most of which are unrelated to the three claims plaintiff raised in his particularized complaint. (See Pl.'s Mem. Supp. Summ. J. (DE 72) ¶¶ 2–7). As such, plaintiff has not met his burden in bringing a claim pursuant to Federal Rule of Civil Procedure 56(a), and plaintiff's motion is DENIED. Additionally, plaintiff filed a motion for entry of default on the basis that defendant did not respond to his motion for summary judgment. Defendant did respond to plaintiff's motion for summary judgment on September 19, 2017, and is not in a default posture. Accordingly, plaintiff's motions for entry of default is DENIED.

D.  Defendants' Motion for Summary Judgment

1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material

fact requiring trial.  See Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  See Anderson, 477 U.S. at 250.

    2.    Analysis

        a.    Administrative Grievances

Defendants argue plaintiff filed to exhaust his administrative grievances with respect to his claims that he was not permitted to eat in the "mainline" and that he was denied access to a law library.  The Prison Litigation Reform Act of 1995 ("PLRA") states "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84–85 (2006); see Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017).  The PLRA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  The PLRA requires a prisoner to exhaust administrative remedies regardless of the relief offered through administrative procedures.  See Booth v. Churner, 532 U.S. 731, 741 (2001).

Administrative grievances must be sufficient in detail to "alert[] the prison to the nature of the wrong for which redress is sought."  Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008).  In Moore, the Fourth Circuit held that a prisoner's individual medical conditions, even if they form a larger record of inadequate treatment, need to be plead in separate administrative grievances to "give prison officials a fair opportunity to address the alleged inadequate care."  See id. at 729.

Grievances must be exhausted before a prisoner brings suit. See Jones v. Bock, 549 U.S. 199, 202 (2007).

In this case, plaintiff failed to exhaust his administrative grievances for his access to food at mainline claim and access to law library claim. Plaintiff exhausted only one grievance, related to the medical treatment of his foot and a request for proper footwear from the medical staff at Butner. (See Kelley Decl. (DE 69) Attach. 1). Plaintiff also mentions Mr. Henry and the SHU, plaintiff's only other remaining claim in this action, in this grievance. (See id). However, because plaintiff does not mention his access to a law library, or the denial of the staff at "mainline" to serve him his food, he did not alert the prison of the nature of his claims for which he seeks redress. See Moore, 517 F.3d at 726. Accordingly, plaintiff's claims relating to mainline and access to a law library are DISMISSED for failure to exhaust his administrative grievances. The court now analyzes plaintiff's remaining claim alleging that he was wrongly placed in the SHU following his medical appointment.

b. FTCA

Defendant argues plaintiff fails to state a claim under the FTCA that he was improperly put in the SHU on November 25, 2013, for one hour. Under the FTCA, the United States waives sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); see Millbrook v. United States, 569 U.S. 50, 52 (2013); Levin v. United States, 568 U.S. 503, 506 (2013); Anderson v. United States, 669 F.3d 161, 164 (4th Cir. 2011); Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009). A prisoner can sue under the FTCA to recover damages from the United States for personal injuries sustained during confinement in a federal prison due to the

10

negligence of a government employee. See Millbrook, 569 U.S. at 52; United States v. Muniz, 374 U.S. 150, 153–58 (1963).

Plaintiff contends he brought his original medical negligence claim, which the court dismissed on February 16, 2017, under the doctrine of "[r]es ipsa loquitor." (See Pl.'s Resp. Opp. Mot. Dismiss. (DE 44) 2). However, plaintiff does not state a legal theory under which he brings this claim – that he was placed in the SHU for one hour – and res ipsa does not apply. See Littlepaige v. United States, 528 F. App'x 289, 295 (4th Cir. 2013). Therefore, the court analyzes plaintiff's claims under the possible causes of action of false imprisonment, abuse of process, and retaliation.

i. False Imprisonment and Abuse of Process

Absent a statutory waiver, the United States is shielded from suit for a civil tort by sovereign immunity. Kerns, 585 F.3d at 193–94. The FTCA does not waive sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h); Ignacio v. United States, 674 F.3d 252, 253 (4th Cir. 2012); Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005) (When invoking a waiver, the plaintiff bears the burden to show "that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim."). Therefore, plaintiff's allegations claiming false imprisonment or abuse of process are barred. See 28 U.S.C. § 2680(h).

ii. Retaliation

A claim of retaliation that fails to implicate any constitutional right "lacks even an arguable basis in law," and is properly subject to dismissal under § 1915(d). See Adams v. Rice, 40 F.3d 72,

75 (4th Cir. 1994) (citations omitted). Plaintiff fails to allege in his pleadings conduct by any individual officer that implicated any of his constitutionally protected rights. Accordingly, plaintiff's FTCA claim based upon a theory of retaliation must fail.

In sum, because plaintiff has failed to present a genuine issue of material fact as to a violation of the FTCA, defendant's motion for summary judgment as to plaintiff's claim that he was placed in the SHU for one hour is GRANTED. Accordingly, defendants' motion for reconsideration of plaintiff's jury trial demand and motion to strike plaintiff's jury trial demands are DENIED as MOOT.

        c.      New Claims

Plaintiff asserts additional factual allegations and claims in his responses and papers filed in conjunction with the instant motions. To the extent plaintiff attempts to allege any new claims in his miscellaneous filings or in response to summary judgment, such claims are not part of this action because plaintiff failed to move to amend his complaint to include any new claims pursuant to Federal Rule of Civil Procedure 15(a). Moreover, permitting plaintiff the opportunity to amend his complaint at this juncture would be prejudicial to defendants. Further, given the timing of plaintiff's newly raised allegations, the court questions plaintiff's ability to exhaust his administrative remedies. For these reasons, the court does not consider any new claims asserted in plaintiff's miscellaneous filings or in response to defendants' motion for summary judgment as part of this action, and such claims are DISMISSED without prejudice.

## CONCLUSION

For the foregoing reasons, the court orders as follows:

    1)    Plaintiff's motion to appoint counsel (DE 59) is DENIED;

2) Plaintiff's motion to stay (DE 56) is DENIED;

3) Plaintiff's motions for summary judgment (DE 72) and entry of default (DE 74) are DENIED;

4) Defendants' motion for summary judgment (DE 67) is GRANTED; and

5) Defendants' motion for reconsideration and motion to strike plaintiff's jury trial demands (DE 54) are DENIED as MOOT.

SO ORDERED, this the 20th day of March, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge